Filed 3/12/21  P. v. Cernogg CA2/3

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION THREE

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>JAMES RUSSELL CERNOGG, JR.,<br><br>    Defendant and Appellant. | B303218<br><br>(Los Angeles County<br>Super. Ct. No. TA085192) |

APPEAL from an order of the Superior Court of Los Angeles County, Sean D. Coen, Judge.  Reversed and remanded with directions.

Edward H. Schulman, under appointment by the Court of Appeal, for Defendant and Appellant.

Xavier Becerra, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Assistant Attorney General, Charles S. Lee and Viet H. Nguyen, Deputy Attorneys General, for Plaintiff and Respondent.

In March 2008, a jury convicted defendant and appellant James Russell Cernogg, Jr., of the murder of Michael Pimental. Cernogg's accomplice was the actual killer. In 2019, Cernogg petitioned for resentencing pursuant to Penal Code section 1170.95.[1] After appointing counsel for Cernogg and considering briefing by the parties, the court denied the petition, finding that the evidence was sufficient to prove beyond a reasonable doubt that Cernogg acted as a direct aider and abettor. Cernogg appeals, contending the trial court employed the wrong standard at the hearing, and he is entitled to a new jury trial in light of Senate Bill 1437. We reject the latter contention. However, because the record is not clear regarding whether the trial court applied a substantial evidence standard or, acting as a finder of fact, applied the beyond a reasonable doubt standard, we reverse and remand for the court to conduct a new hearing.

**FACTUAL AND PROCEDURAL BACKGROUND**

1. *The murder and Cernogg's conviction*[2]

On May 11, 2006, 12-year old Camilo H. and 15-year old Pimental were "tagging" in the area of Rosecrans and Poinsettia Avenues in Compton. Camilo wrote his moniker, "Dust," on a wall.

Cernogg, who was an associate of the Elm Street Piru gang, was riding his bicycle in the area and asked the youths why they were writing on the wall. Camilo said, " 'My bad.' " Cernogg told

---

[1] All further undesignated statutory references are to the Penal Code.

[2] We derive the factual and procedural background in part from our prior opinions in this matter, of which we have taken judicial notice at Cernogg's request. (Evid. Code, §§ 451, 452, 459.)

2

the boys to come with him, and they complied.  As they walked down Rosecrans, Cernogg spoke with another person on the phone and said, " 'I got them right [here.]' "  The person on the phone told him to hold the boys there.  Cernogg said to Camilo, " 'I'm going to kill you and your mom.' "

Meanwhile, Michael Morales, a friend of the boys, approached and asked Pimental if he had seen his mother.  Pimental asked Morales to accompany them.  Cernogg asked Morales if he wanted " 'some problems, too' " and said " '[y]ou better go back.' "  According to Morales's trial testimony, Cernogg pulled up his shirt to reveal a gun in his waistband.[3]  Cernogg said, " 'I'm going to teach these little fools a lesson not to write in my hood again.' "

Within a few minutes, defendant Jeffrey Martin, an Elm Street Piru gang member, arrived at the scene.  He held a gun, covered with a rag.  Without saying a word to anyone, Martin pointed the gun at Pimental, who pleaded, " 'No, don't shoot.' "  From a distance of no more than three feet away, Martin fired a single shot into Pimental's head, killing him.  Cernogg ran away, leaving his bicycle at the scene; Martin walked away in the same direction.

Cernogg was charged with murder.  At trial, the People proceeded under two theories of guilt: that Cernogg directly aided and abetted the murder, and that the murder was the natural and probable consequence of the target crime, felony false imprisonment.  The jury was instructed on both theories.  (CALJIC No. 3.01; CALJIC No. 3.02.)  It convicted Cernogg of

---

[3]  At trial, Morales did not identify Cernogg as the man on the bicycle.  Prior to trial, he did not tell detectives that the man on the bicycle displayed a gun.

3

first degree murder (§ 187, subd. (a)) and additionally found gang and firearm enhancements true. (§§ 186.22, subd. (b), 12022.53, subds. (b), (c), (d), & (e)(1).) The trial court sentenced Cernogg to 25 years to life in prison for the murder, plus 25 years to life for the firearm enhancement.

2. *Prior appeals*

In an opinion issued on December 9, 2009, this Division affirmed Cernogg's judgment. (*People v. Cernogg* (Dec. 9, 2009, B210684) [nonpub. opn.] (*Cernogg I*).) *Cernogg I* rejected his claims that the evidence was insufficient, the trial court committed instructional and sentencing errors, and the sentence amounted to cruel and unusual punishment. In particular, *Cernogg I* concluded the evidence was sufficient to support both theories advanced by the People, i.e., direct aiding and abetting and the natural and probable consequences doctrine. After describing the evidence supporting the conclusion that Cernogg was a direct aider and abettor, *Cernogg I* held, "This evidence is more than sufficient to show that Cernogg shared Martin's intent and purpose; hence, he is liable as a direct aider and abettor of Pimental's murder." Turning to the sufficiency of the evidence to support the conviction under the natural and probable consequences doctrine, *Cernogg I* continued: "Alternatively, it is also possible that Cernogg did not know that Martin intended to execute Pimental. Perhaps, as Cernogg suggests in his opening brief, he thought Martin would merely give the young boys a 'stern warning.' Even so, there is still evidence to support the judgment under the natural and probable consequences doctrine."

In 2014, our Supreme Court concluded, in *People v. Chiu* (2014) 59 Cal.4th 155 (*Chiu*), that an aider and abettor cannot be

4

guilty of first degree premeditated murder under the natural and probable consequences doctrine. (*Id.* at pp. 158–159.) In April 2015, we granted Cernogg's motion to recall the remittitur and reinstate the appeal, based on *Chiu*. In an opinion issued on September 3, 2015, we concluded that under *Chiu,* the trial court had erred by instructing the jury on the natural and probable consequences doctrine. (*People v. Cernogg* (Sept. 3, 2015, B210684) [nonpub. opn.] (*Cernogg II*).)

We determined that the matter had to be remanded for either a new trial, or to allow the People to accept a reduction of the offense to second degree murder. We reasoned: "Where, as here, a defendant possibly has been convicted of first degree premeditated murder under the natural and probable consequences doctrine, the conviction must be reversed unless the reviewing court can conclude beyond a reasonable doubt that the jury based its verdict on a legally valid theory. [Citations.] A legally valid theory—direct aiding and abetting—was before the jury. But, as the People concede, we cannot determine beyond a reasonable doubt that the jury based its verdict on that theory, as opposed to the invalid natural and probable consequences doctrine. The People argued both theories to the jury and nothing in the record suggests on which theory the jury relied."

We further explained that the evidence was sufficient to prove Cernogg acted as a direct aider and abettor: "As to direct aiding and abetting, we previously found that there was sufficient evidence to support that theory. To prove liability as a direct aider and abettor, the prosecution must show that the defendant 'acted "with knowledge of the criminal purpose of the perpetrator *and* with an intent or purpose either of committing, or of encouraging or facilitating commission of, the offense.'

5

[Citation.] The evidence here was that Martin was a known member of the Elm Street Piru gang, and Cernogg was an associate of the gang. On the night of Pimental's murder, Cernogg was riding his bike in gang territory. When he stopped Pimental and Camilo, he told them to come with him. Cernogg chirped Martin, who told Cernogg to 'hold them' there. Cernogg followed Martin's orders. Cernogg stated his intent to Camilo: ' "I'm going to kill you and your mom." ' [¶] That Cernogg intended harm is further evidenced by his threat to Morales, a friend of Pimental's and Camilo's who happened to wander by. Cernogg told Morales that unless he too wanted ' "some problems," ' he had ' "better go." ' Cernogg lifted his shirt to reveal a gun and said something to the effect of, ' "I'm going to teach these little fools a lesson not to write in my hood again." ' This evidence is more than sufficient to show that Cernogg shared Martin's intent and purpose and to therefore allow a retrial under a direct aiding and abetting theory."

On remand, the People elected not to retry Cernogg for first degree murder. His conviction was reduced to second degree murder, and the trial court resentenced him to 15 years to life for the murder, plus 25 years to life for the firearm enhancement.

3. *Cernogg's section 1170.95 petition and appeal*

In January 2019, after passage of Senate Bill No. 1437 (2017–2018 Reg. Sess.) (Senate Bill 1437), Cernogg filed a petition to vacate his second degree murder conviction. Using a preprinted form, he checked boxes stating that he had been convicted of murder pursuant to the felony-murder rule or the natural and probable consequences doctrine; he was not the actual killer; and he could not now be convicted of murder in light

6

of changes to the law made by Senate Bill 1437. He also checked a box requesting that counsel be appointed for him.

The trial court determined that Cernogg had established a "prima facie case for resentencing" and appointed counsel for him. Thereafter, the People filed a response opposing the petition, Cernogg filed a reply, and the People filed another response. The People argued that the record of conviction was sufficient to prove Cernogg acted as a direct aider and abettor with the intent to kill, and therefore he was not entitled to relief under section 1170.95. Cernogg argued the trial evidence did not show he had the intent to kill. Further, he argued the question was not whether substantial evidence supported denial of the petition. Instead, the court had to apply the "beyond a reasonable doubt" standard.

On November 21, 2019, the trial court denied the petition. It stated that it had taken into consideration "the court file" and this court's prior opinions in the case. It explained, "Based upon that . . . I find to be the law of this case and I do find that [section] 1170.95 is not applicable to Mr. Cernogg, specifically 1170.95(a)(3) in that the findings of the appellate court and my findings with the appellate court decision is that their malice was present in regards to an intent to kill on a direct aiding-and-abetting theory beyond a reasonable doubt."

Defense counsel argued at the hearing that the substantial evidence test, applicable when an appellate court reviews the sufficiency of the evidence, should not apply to evaluation of a section 1170.95 petition. Instead, she argued, the court was required to presume Cernogg was innocent and "weigh the evidence again." In counsel's view, the evidence did not show Cernogg was a direct aider and abettor.

7

In response the trial court opined, "When the appellate court makes the decision, some of these facts again are the law of the case and the finding of fact and that's one of the things I'm going by, almost that I am bound by, not that there's sufficient evidence, but they are pointing out the fact of the finding and that's what I'm basing my decision on as well."

Cernogg filed a timely notice of appeal.

## DISCUSSION

1. *Senate Bill 1437*

Senate Bill 1437, which took effect on January 1, 2019, limited accomplice liability under the felony-murder rule and eliminated the natural and probable consequences doctrine as it relates to murder, to ensure that a person's sentence is commensurate with his or her individual criminal culpability. (*People v. Gentile* (2020) 10 Cal.5th 830, 842–843 (*Gentile*); *People v. Verdugo* (2020) 44 Cal.App.5th 320, 323, review granted Mar. 18, 2020, S260493 (*Verdugo*); *People v. Munoz* (2019) 39 Cal.App.5th 738, 749–750, 763, review granted Nov. 26, 2019, S258234 (*Munoz*).)

Prior to passage of Senate Bill 1437, under the natural and probable consequences doctrine a defendant was "liable for murder if he or she aided and abetted the commission of a criminal act (a target offense), and a principal in the target offense committed murder (a nontarget offense) that, even if unintended, was a natural and probable consequence of the target offense." (*People v. Lamoureux* (2019) 42 Cal.App.5th 241, 248; *Munoz, supra*, 39 Cal.App.5th at p. 749, rev.gr.) Senate Bill 1437 amended section 188 to state that malice may not be imputed to a person based solely on his or her participation in a crime. (§ 188, subd. (a)(3).) Thus, pursuant to Senate Bill 1437,

8

where the felony-murder rule is not at issue, a person must act with malice to be convicted of murder. (*Munoz*, at p. 749.)

Senate Bill 1437 also added section 1170.95, which created a procedure whereby persons convicted of murder under a felony-murder or natural and probable consequences theory may petition in the sentencing court for vacation of their convictions and resentencing. A defendant is eligible for relief under section 1170.95 if he meets three conditions: (1) he must have been charged with murder by means of a charging document that allowed the prosecution to proceed under a natural and probable consequences or felony-murder theory; (2) he must have been convicted of first or second degree murder; and (3) he could no longer be convicted of first or second degree murder due to changes to sections 188 and 189 wrought by Senate Bill 1437. (§ 1170.95, subd. (a).)

Evaluation of a section 1170.95 petition requires a multi-step process: an initial review to determine the petition's facial sufficiency; a prebriefing, " 'first prima facie review' " to preliminarily determine whether the petitioner is statutorily eligible for relief as a matter of law; and a second, postbriefing prima facie review to determine whether the petitioner has made a prima facie case that he or she is entitled to relief. (*People v. Tarkington* (2020) 49 Cal.App.5th 892, 897, review granted Aug. 12, 2020, S263219 (*Tarkington*); *Verdugo, supra,* 44 Cal.App.5th at pp. 327–330, rev.gr.; but see *People v. Cooper* (2020) 54 Cal.App.5th 106, 118, review granted Nov. 10, 2020, S264684 [1170.95, subd. (c) does not require two prima facie reviews].) If the petitioner makes such a showing, the court must issue an order to show cause (OSC) and conduct a hearing to determine whether to vacate the murder conviction and resentence the

9

petitioner on any remaining counts.  (§ 1170.95, subds. (c), (d); *People v. Nguyen* (2020) 53 Cal.App.5th 1154, 1165–1166 (*Nguyen*).)

At that hearing, the burden of proof is on the prosecution to prove, beyond a reasonable doubt, that the petitioner is ineligible for resentencing.  Both the People and the petitioner may rely on the record of conviction, including an appellate opinion in the case, and may also present new and additional evidence to demonstrate the petitioner is, or is not, entitled to resentencing.  (§ 1170.95, subd. (d)(3); see *People v. Clements* (2021) 60 Cal.App.5th 597, 603, 612–613 (*Clements*); *Tarkington, supra,* 49 Cal.App.5th at pp. 899, fn. 5, 909, rev. gr.; *Verdugo, supra,* 44 Cal.App.5th at p. 333, rev. gr.)  "If the prosecution fails to sustain its burden of proof, the prior conviction, and any allegations and enhancements attached to the conviction, shall be vacated and the petitioner shall be resentenced on the remaining charges." (§ 1170.95, subd. (d)(3).)

2. *Application here*

Although the trial court here did not issue an OSC, the parties treat its denial of the petition as a decision on the merits following an evidentiary hearing under section 1170.95, subdivision (d)(3).  Cernogg does not contend the court's failure to issue an OSC was error or somehow prejudiced him.  Accordingly, we treat the court's ruling as a denial of the petition under subdivision (d)(3).

Cernogg contends that the trial court erroneously based its denial of his petition on the substantial evidence standard: that is, it improperly concluded he was not entitled to relief because *Cernogg II* held there was sufficient evidence presented at his trial to prove he was a direct aider and abettor.  Instead, he

argues, his petition could be denied only if the People established, beyond a reasonable doubt, that his jury actually based its verdicts upon a still-valid theory, a showing they could not make in light of this court's earlier opinions.  Further, he asserts that unless his murder conviction is vacated, his case must be remanded for a new jury trial.

The People appear to assert that, when ruling on a section 1170.95 petition at the subdivision (d)(3) hearing stage, a trial court must act as a trier of fact and apply the reasonable doubt standard.  They contend that the trial court correctly applied this standard here, despite its discussion of the law of the case doctrine.

a. *Principles of statutory interpretation*

When construing a statute, our "primary task is to determine and give effect to the legislature's purpose in enacting the law." (*In re H.W.* (2019) 6 Cal.5th 1068, 1073.)  " 'We start with the statute's words, which are the most reliable indicator of legislative intent.' [Citation.]  ' "We interpret relevant terms in light of their ordinary meaning, while also taking account of any related provisions and the overall structure of the statutory scheme to determine what interpretation best advances the Legislature's underlying purpose." ' [Citation.]  'If we find the statutory language ambiguous or subject to more than one interpretation, we may look to extrinsic aids, including legislative history or purpose to inform our views.' [Citation.]" (*In re A.N.* (2020) 9 Cal.5th 343, 351–352.)  We harmonize the various parts of an enactment by considering the particular clause or section in the context of the statute as a whole.  (*People v. DeLeon* (2017) 3 Cal.5th 640, 648; *In re H.W.,* at p. 1073.)  We review questions of

statutory interpretation de novo.  (*People v. Gonzalez* (2017) 2 Cal.5th 1138, 1141.)

> b.  *The "alternative-theory error" standard is inapplicable to evaluation of a section 1170.95 petition*

Cernogg argues that a trial court may deny a section 1170.95 petition only if it finds, beyond a reasonable doubt, that the petitioner was *actually* convicted of murder under a still-viable theory.  On direct appeal, an "alternative-theory error" standard applies when a trial court erroneously instructs on two theories of guilt, one legally correct, one not.  Where the record suggests the jury could have based its verdict on the legally invalid theory, and there is no other basis to determine the instruction was harmless beyond a reasonable doubt, reversal is required.  (*People v. Aledamat* (2019) 8 Cal.5th 1, 13; *Chiu, supra,* 59 Cal.4th at p. 167 [when court instructs on a legally correct and a legally erroneous theory, reversal is required "unless there is a basis in the record to find that the verdict was based on a valid ground"]; *In re Martinez* (2017) 3 Cal.5th 1216, 1218 [reversal required unless record shows jury actually relied on a legally valid theory].)  The question is not whether it is clear beyond a reasonable doubt that the defendant was found guilty under the legally correct theory, "but whether we can say, beyond a reasonable doubt, that the legally incorrect jury instruction did not taint the actual jury verdict." (*People v. Baratang* (2020) 56 Cal.App.5th 252, 263.)

Cernogg argues that under section 1170.95, "[p]roving *ineligibility* beyond a reasonable doubt is simply another way of saying that the instructional error in the first instance was 'harmless beyond a reasonable doubt.' "  Thus, he reasons, because this court has already held that it was not possible to

12

determine, beyond a reasonable doubt, which theory the jury relied upon, his petition should have been granted and his conviction vacated.

We disagree. This is not a direct appeal, and the alternative-theory error standard does not apply. As *People v. Rodriguez* (2020) 58 Cal.App.5th 227 (*Rodriguez*) recently explained, the alternative-theory error standard is inconsistent with section 1170.95's language in three respects. "First, the [alternative-theory error] line of cases requires courts to inquire whether 'there is a basis in the record to find that the verdict was based on a valid ground.' [Citation.] That backward looking evaluation is inconsistent with section 1170.95, subdivisions (a)(3)'s and (d)(3)'s explicit direction to the court to determine if the petitioner could now be convicted of murder under sections 188 and 189 as amended, not whether he or she was, in fact, convicted of murder under a still-valid theory. Second, subdivision (d)(3) permits both parties to present new or additional evidence at the hearing after issuance of the order to show cause. If the superior court's ineligibility ruling may be based on evidence not heard by the original trier of fact, the Legislature cannot have intended the court simply to evaluate the grounds on which the original verdict was reached. Finally, section 1170.95 is available to defendants convicted of murder following a plea in lieu of a trial. Given the limited record in many of those cases, it would be impossible to assess whether a still-valid ground for a murder conviction existed, let alone to determine beyond a reasonable doubt that the valid ground was the basis for the plea. Yet section 1170.95 contemplates the same procedure to determine ineligibility in plea cases as in cases in

13

which the murder conviction was reached at trial." (*Rodriguez*, at pp. 239–240.)

Nor do we agree with Cernogg's perfunctory contention that application of the alternative-theory error standard is required in order to preserve his right to a "reliable and unanimous jury determination" of his guilt. The "retroactive relief [petitioners] are afforded by Senate Bill 1437 is not subject to Sixth Amendment analysis. Rather, the Legislature's changes constituted an act of lenity that does not implicate defendants' Sixth Amendment rights" to a jury trial. (*People v. Anthony* (2019) 32 Cal.App.5th 1102, 1156; *People v. Lopez* (2019) 38 Cal.App.5th 1087, 1114–1115, review granted Nov. 13, 2019, S258175; *People v. Lopez* (2020) 56 Cal.App.5th 936, 958, review granted Feb. 10, 2021, S265974 [proceedings under section 1170.95 do not implicate the Sixth Amendment right to have essential facts found by a jury beyond a reasonable doubt].) "Section 1170.95 petitioners are not criminal defendants charged anew with murder and constitutionally entitled to a jury trial. Instead, they stand convicted of murder, their convictions are final, and they can constitutionally be punished for murder despite the ameliorative changes to the law of murder enacted by Senate Bill No. 1437." (*People v. Lopez*, 56 Cal.App.5th at p. 957.)

c. *The independent fact finder standard applies to a section 1170.95, subdivision (d)(3) hearing*

We agree with Cernogg, however, insofar as he asserts that the proper inquiry for a court ruling on a section 1170.95 petition is not whether there is substantial evidence in the record to support a murder verdict on a still-valid ground. Instead, at the subdivision (d)(3) hearing stage, the court must act as an independent trier of fact and determine—based upon the record

14

and/or additional evidence presented by the parties—whether, beyond a reasonable doubt, the petitioner is guilty under a theory that remains valid after Senate Bill 1437's enactment.

Section 1170.95 is not a model of clarity.  Subdivision (d)(3) provides that the prosecution has the burden to prove, beyond a reasonable doubt, that "the petitioner is ineligible for resentencing."  Subdivision (d) does not define ineligibility.  Therefore, "ineligible for resentencing" necessarily refers back to the three requirements for filing a section 1170.95 petition listed in subdivision (a): a charging document must have been filed against the petitioner allowing the prosecution to proceed under a felony-murder or natural and probable consequences theory; the petitioner was convicted of murder; and—most significantly for our inquiry—the petitioner "could not be convicted of first or second degree murder because of changes to Section 188 or 189 made effective January 1, 2019," that is, by Senate Bill 1437.  In most cases, persons convicted of offenses other than murder, or who are ineligible as a matter of law, will not reach the subdivision (d)(3) hearing stage.  The touchstone for the trial court's determination at the hearing, therefore, is whether the petitioner "could not be convicted" of murder after the amendments effectuated by Senate Bill 1437.  The People's task is to prove the converse, that the petitioner *could be* convicted of murder absent application of the felony-murder rule or the natural and probable consequences doctrine.  (See *People v. Lopez, supra*, 56 Cal.App.5th at pp. 948–949, rev. gr.)

The appellate courts are currently divided on the question of what this phrase means.  *People v. Duke* (2020) 55 Cal.App.5th

15

113,[4] concluded that the prosecution must prove, beyond a reasonable doubt, that "the defendant *could* still have been convicted of murder under the new law—in other words, that a reasonable jury could find the defendant guilty of murder with the requisite mental state for that degree of murder. This is essentially identical to the standard of substantial evidence, in which the reviewing court asks 'whether, on the entire record, a rational trier of fact could find the defendant guilty beyond a reasonable doubt . . . .' " (*Id.* at p. 123; see also *People v. Garcia* (2020) 57 Cal.App.5th 100, 106, review granted Feb. 10, 2021, S265692.)

Other courts have rejected this construction of the statute, concluding that a petition may not be denied based merely upon the existence of sufficient evidence in the record to support a murder conviction. Instead, the court hearing the petition must act as an independent fact finder and determine whether the evidence—in the record or newly presented at the hearing—establishes beyond a reasonable doubt that the petitioner is guilty of murder under amended sections 188 and 189. (See *People v. Duchine* (2021) 60 Cal.App.5th 798, 812–815 (*Duchine*); *Clements, supra,* 60 Cal.App.5th at pp. 603, 615–617 [trial judge ruling on a section 1170.95 petition "sits as a fact finder" and "reviews the record, hears the testimony, and decides as a factual matter whether the petitioner committed murder under the current law"]; *Rodriguez, supra,* 58 Cal.App.5th at pp. 243–244; *People v. Lopez, supra,* 56 Cal.App.5th at p. 951, rev. gr. [trial court must find, beyond a reasonable doubt, that prosecutor has proved each element of murder under current law].) Our

_____

[4]     Review was granted in *Duke* on January 13, 2021, S265309.

16

Supreme Court is currently considering the issue. (*People v. Duke*, S265309.)

Although we do not necessarily agree with all of the analyses propounded by the latter group of authorities, we agree with their conclusion that section 1170.95 requires that the trial court, acting as trier of fact, must determine whether the petitioner is guilty of murder based on a still-valid theory.

We acknowledge that some aspects of section 1170.95 suggest the *Duke* court's conclusion is correct. After Senate Bill 1437, an accomplice who was not the actual killer may still be guilty of murder if he or she was a direct aider and abettor, acted with malice, or—if the felony-murder rule was at issue—was a major participant who acted with reckless indifference to human life. (See *People v. Lewis* (2020) 43 Cal.App.5th 1128, 1135, review granted Mar. 18, 2020, S260598; *Nguyen*, *supra*, 53 Cal.App.5th at p. 1168; §§ 187, subd. (a); 188, subd. (a); 189, subd. (e).) Section 1170.95, subdivision (d)(3) expressly provides that at the hearing, either party may rely on the record of conviction or present new evidence. Arguably, therefore, where the People have already presented sufficient evidence at trial to prove the defendant was a direct aider and abettor, acted with malice, or was a major participant who acted with reckless indifference to human life, such evidence necessarily proves he or she *could be* convicted of murder despite Senate Bill 1437's amendments.

And, because the substantial evidence inquiry incorporates the reasonable doubt standard, it can be argued that subdivision (d)(3)'s reasonable doubt requirement is met. (See *People v. Morales* (2020) 10 Cal.5th 76, 88 (*Morales*) [" 'When considering a challenge to the sufficiency of the evidence to support a

conviction, we review the entire record in the light most favorable to the judgment to determine whether it contains substantial evidence—that is, evidence that is reasonable, credible, and of solid value—from which a reasonable trier of fact could find the defendant guilty *beyond a reasonable doubt*,' " italics added]; *People v. Flinner* (2020) 10 Cal.5th 686, 748.)

Nonetheless, two aspects of section 1170.95 convince us that the statute should not be so construed: the express reference to the reasonable doubt standard in subdivision (d)(3), and the provision that the parties may present new evidence at the hearing.

First, the Legislature's explicit requirement that the prosecution must prove a petitioner could be convicted under current law "beyond a reasonable doubt" strongly suggests the substantial evidence standard is inapplicable. If the Legislature simply intended to impose the reasonable doubt requirement that is already incorporated into the substantial evidence test, the reference in subdivision (d)(3) is at best surplusage. But when construing a statute, we must give meaning to each of its provisions. (See *B.B. v. County of Los Angeles* (2020) 10 Cal.5th 1, 13 [courts should, if possible, "give meaning to every word of a statute and avoid constructions that make any word surplusage"]; *People v. Franco* (2018) 6 Cal.5th 433, 437–438; *Clements*, *supra*, 60 Cal.App.5th at p. 615.) Construing the statute to require the prosecution "to prove 'beyond a reasonable doubt' that 'substantial evidence' exists," "borders on incomprehensible." (*Duchine*, *supra*, 60 Cal.App.5th at p. 813–815.) Under this approach, the court illogically would be required to "employ these two widely divergent standards in a combined (and backwards) fashion to determine . . . whether a jury

hypothetically could have found a defendant guilty under a permissible theory had it addressed the issue." (*Id*. at p. 816, italics omitted.)

Moreover, there are crucial differences in the reasonable doubt standard incorporated into the substantial evidence test as applied on appeal, and the reasonable doubt standard employed by a trier of fact. In the former, although the appellate court must find the evidence sufficient to support the judgment beyond a reasonable doubt, the record is viewed in the light most favorable to the judgment. (*People v. Harris* (2013) 57 Cal.4th 804, 849; *Morales*, *supra*, 10 Cal.5th at p. 88.) A court examining the record for substantial evidence presumes in support of the judgment the existence of every fact the trier of fact could reasonably deduce from the evidence, and does not resolve evidentiary conflicts or judge credibility. (*People v. Veamatahau* (2020) 9 Cal.5th 16, 35–36; *People v. Harris*, at p. 849; *Morales*, at p. 88; *People v. Gomez* (2018) 6 Cal.5th 243, 278.) Nor does the court inquire whether the evidence might be reasonably reconciled with the defendant's innocence. (*People v. Veamatahau*, at p. 36; *People v. Gomez*, at p. 278.) In contrast, when a trier of fact applies the reasonable doubt standard, it must do the opposite: it must weigh the evidence, judge credibility, and impartially consider all the evidence and determine whether it leaves the trier of fact with an abiding conviction the charge is true. (See § 1096; *Clements*, *supra*, 60 Cal.App.5th at p. 615; CALCRIM No. 220.)

Given these differences, the explicit reference to the reasonable doubt standard indicates the Legislature expected a trier of fact to independently make the subdivision (d)(3) inquiry. Construing that subdivision to require only a substantial

19

evidence test would effectively read the reasonable doubt language out of the provision.  (*Clements*, *supra*, 60 Cal.App.5th at p. 615.)  "It is unlikely the Legislature would have selected that language if it had intended only an appellate-type review of the sufficiency of the evidence of the petitioner's guilt on a still-viable theory, rather than requiring the prosecutor to actually establish the petitioner's guilt under the newly amended statutes." (*Rodriguez, supra*, 58 Cal.App.5th at p. 242.)

Second, the substantial evidence test does not align with subdivision (d)(3)'s provision that the parties may present new evidence at the hearing.  Applying the substantial evidence test "has the demerit of leaving completely obscure what the trial judge would be asked to do in a case where there is a trial transcript *and* new live testimony." (*Clements*, *supra*, 60 Cal.App.5th at p. 617]; *Rodriguez, supra*, 58 Cal.App.5th at p. 242 ["How is the superior court to evaluate that additional evidence if not as an independent fact finder?  It would be pointless for the court's role in this situation simply to be deciding whether a jury *could* credit a new witness's testimony and thus *could* conclude the petitioner had acted with express malice"].)  Indeed, where, as here, the record already contains substantial evidence to prove guilt under a valid theory, the provision allowing admission of new evidence would be meaningless.  Since a court applying the substantial evidence test examines only whether the evidence is sufficient—and may not weigh credibility or resolve evidentiary conflicts—new evidence could never overcome the conclusion that substantial evidence already existed; that would be a foregone conclusion.  We do not think the Legislature would have enacted a provision that, at least in some cases, could have no practical effect.

20

Finally, application of the independent fact finder standard better effectuates the Legislature's intent. Due to its concerns about the disparity between individual culpability and punishment that existed under the natural and probable consequences doctrine and the felony-murder rule, the Legislature enacted Senate Bill 1437 to more equitably sentence "both past and future offenders in relation to their own actions and subjective menses reae." (*Rodriguez, supra,* 58 Cal.App.5th at p. 240.) Application of the substantial evidence standard does less to fulfill these goals than does the independent fact finder standard. (See *id.* at p. 238.) Because the substantial evidence standard is highly deferential, its application risks denying relief to petitioners in cases where the evidence was merely sufficient, rather than persuasive—and in which a trier of fact, weighing the evidence, resolving conflicts, and evaluating credibility— might well come to a different conclusion. Moreover, the questions at issue in the direct appeal may have been quite different than those arising when the natural and probable consequences theory and felony-murder rule are excised from the picture. Thus, looking solely to a prior appellate opinion's holding that substantial evidence existed risks overlooking or giving too little weight to evidence that was of lesser import when the felony-murder rule and natural and probable consequences theory were still viable. (See *Clements, supra,* 60 Cal.App.5th at p. 613.)[5]

---

[5]　We do not suggest that reliance on a prior opinion is improper. It is part of the record of conviction, and section 1170.95, subdivision (d)(3) expressly allows the parties and court, at the hearing, to rely on the record of conviction. (See, e.g., *Clements, supra,* 60 Cal.App.5th at pp. 612–613; *People v. Gomez*

21

In sum, "[i]n view of the ameliorative purposes of Senate Bill 1437, the Legislature's stated concerns about proportionality, fairness and excessive punishment, and its adoption of a trial court proceeding at which new evidence may be submitted and a criminal trial burden of proof beyond a reasonable doubt is applied," (*Duchine*, *supra*, 60 Cal.App.5th at p. 813), application of the substantial evidence standard is unwarranted.[6]

      d. *Because it is unclear whether the trial court applied the correct standard, reversal and remand is required*

The People argue the record shows the trial court independently found, beyond a reasonable doubt, that Cernogg acted with the intent to kill. In our view, the record is ambiguous. The court stated it had considered the court file as well as this court's prior opinions, and it discussed the evidence presented at trial. It also referenced the reasonable doubt standard. But, the record also suggests the court felt bound by the law of the case doctrine, and denied the petition because this court had already held substantial evidence existed to support a jury finding that Cernogg was guilty as an aider and abettor. The trial court referenced its own findings, but only in conjunction with the "findings of the appellate court." When Cernogg's counsel asked the court to specify the basis for its decision, it responded that "the findings by the appellate court are such that there is more than sufficient evidence to find

_____

(2020) 52 Cal.App.5th 1, 15–16, review granted Oct. 14, 2020, S264033; *Verdugo*, *supra*, 44 Cal.App.5th at p. 333, rev. gr.; *People v. Lewis*, *supra*, 43 Cal.App.5th at p. 1136, fn. 7, rev. gr.)

[6] In light of our conclusion, we do not address Cernogg's perfunctory assertion that application of the substantial evidence standard violates equal protection principles.

beyond a reasonable doubt the defendant guilty under the aiding-and-abetting theory and that's based on the appellate court's finding it appears that's what the jury did." When counsel argued that the substantial evidence test did not apply, the court again referenced the law of the case doctrine. Had the court been acting as an independent fact finder, there would have been no reason for it to discuss the law of the case doctrine. In light of this ambiguity, we reverse the court's order and remand to allow the trial court to conduct a new hearing at which it should act as the trier of fact, determine whether the prosecution has established all elements of second degree murder on a still-viable theory, and state its findings on the record. (See *Rodriguez, supra*, 58 Cal.App.5th at p. 244.)

3. *Cernogg is not entitled to a new jury trial*

Finally, Cernogg asserts that "should this Court decline to vacate and reduce the offense to false imprisonment, it should order a new jury trial because it cannot be determined beyond a reasonable doubt whether the jury relied upon a legally correct or incorrect theory of murder when it found appellant guilty in 2008." This contention rests on two faulty premises: first, that Senate Bill 1437 applies retroactively; and second, that Cernogg can appeal his conviction despite the fact his judgment is long final.

Our Supreme Court has recently confirmed that Senate Bill 1437's amendments do not apply retroactively on direct appeal, and the sole avenue of relief is a section 1170.95 petition. (*Gentile, supra*, 10 Cal.5th at p. 839.) The court there explained: "the procedure set forth in section 1170.95 is the exclusive mechanism for retroactive relief and thus the ameliorative provisions of Senate Bill 1437 do not apply to nonfinal judgments

on direct appeal." (*Ibid.*)  This holding compels rejection of Cernogg's contention.  Indeed, Cernogg's conviction was final when Senate Bill 1437 was enacted.  If the bill's ameliorative provisions do not apply to nonfinal convictions, they certainly cannot apply to a final conviction.  (See *In re Estrada* (1965) 63 Cal.2d 740, 745.)  Senate Bill 1437 does not entitle Cernogg to a new trial.

## DISPOSITION

The order is reversed.  The matter is remanded for further proceedings in accordance with the opinions expressed herein.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

EDMON, P. J.

We concur:

LAVIN, J.

EGERTON, J.

24